case, which is Danglar v. State of Georgia 19-15042. This argument will be a little lopsided. And we have Mr. Silberman against the empty chair. Whenever you're ready, no hurry. And I'll note at the outset that you've taken this case pro bono. We appreciate that very much. Thank you, Your Honor. Thank you for appointing me. Can I ask you a question even before you talk? This is not out of your time. Were this case remanded? Would you stay with Mr. Danglar? I can't. I am not a member of the Georgia Bar, so I would have to work with local counsel before I could continue on this case. I would be . . . it would be . . . I'm inclined to try to continue with this case, but I can't make any promises. All right. Fire away, whenever you're ready. May it please the Court, Appellate Lincoln Danglar was entitled to release from the Georgia Department of Corrections on July 31st, 2017. On that day, he was transported from the long-term Smith State Prison to the short-term Transitional Center. He signed his release paperwork, and he should have been allowed to go. Nonetheless, Georgia State officials continued to detain him for 86 days. After being released from Georgia State custody, Appellant brought this case alleging violations of his Fourth Amendment and Fourteenth Amendment rights, as well as Georgia State law. To state a claim under the Fourth Amendment, Appellant needed to identify a seizure, its unlawfulness, and that it was done under color of State law. Prison guards act under power vested in them by the State. They are unquestionably State officials, and their actions are done under color of State law. Eighty-six days in a penitentiary is a seizure. This detention was unlawful for at least two reasons. First, there was no neutral magistrate reviewing the detention. In Gerstein v. Pugh, the Supreme Court reviewed a practice in which an information issued by a prosecutor could hold persons prior to trial for an extended period of time. In that case, the Supreme Court held that such pretrial detention without review by a neutral and detached magistrate was unconstitutional. Counsel, can I ask you a question before you proceed? Do you concede that they had the right to hold him for 48 hours? No, Your Honor, I do not. Okay. Can you tell me why? Your Honor, under 287.7d, it states that upon such agency shall maintain custody of an alien for, sorry, let me get to the point. Upon a determination by the department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours. He was otherwise detained by a criminal justice agency. He was detained by the State for the prior year plus, Your Honor. And in Gerstein, returning to Gerstein, in Gerstein they found that the neutral magistrate was required to assure the individual liberty guaranteed by the Fourth Amendment. In this case, appellant was detained on the basis of a form on a checkboxes. There were five checkboxes with generic statements. The ICE official checked a couple boxes. He signed his name and voila, he had a form that was then the basis for detention. It was issued to another, it was addressed to another immigration officials. Both immigration officials were on the one side of a competitive enterprise of ferreting out unlawful immigration. Every court to have reviewed such detainers has determined that they are not real warrants and as such they do not authorize the prolonged detention that a neutral magistrate could authorize. The 86-day detention pursuant to such a piece of paper is not a valid detention. Counsel, looking at Dangler's complaint, it seems that there is an allegation that the continued detention past the 48 hours was undertaken pursuant to an intergovernmental service agreement contemplated by a memo, a memorandum of agreement. What are we to make of this? There's no IGSA in the record, correct? I do not believe there is one at this point. I think we're to make of this, this is a pro issued liberally in the Form I-200, the detainer statute. This is a complicated area of immigration law and it's not necessarily that it's a difficult area to understand. So I think what we are to make of it is that there was a detainer issued to Georgia state officials. We see a letter from Georgia state officials in the record saying that they've received a detainer. He received a copy of the Form I-200. We know that there is a Form I-200 issue. We know that, and based on what the prison guards stated to him at that time, including that he was ICE's property and that he was only going to be held for 48 hours, we can reasonably infer that he was held pursuant to the Form I-200. The memorandum of understanding is a more complicated question. I don't know that we have a full record developed at this time. So we don't know if there's anything in the agreement between ICE and the Georgia Department of Corrections authorizing a detention longer than what CFR 287.7 allows? No, Your Honor, we don't know the agreement, but we do know that under Gerstein v. Pugh, any detention over 48 hours would need review by any really detention here. In this case, after a year of being in prison, any detention would require review by a neutral magistrate, and we know he never received a neutral magistrate's determination, that much is alleged, Your Honor. In addition to this violation for not having received a determination by a neutral magistrate, Georgia state officials also lacked any probable cause to detain. Probable cause means, as Judge Posner has explained it, reasonable grounds for believing that the person seized is subject to seizure under the governing legal framework, under the governing legal standard. The legal standard in this case is federal immigration law. In Arizona v. United States, the Supreme Court explained that the power to make arrests for civil immigration is vested in the federal government, and that the federal government has completely preempted this field. Thus, state officials cannot arrest an immigration solely on suspicions of removability. In this case, the only evidence that Georgia state officials were aware of was the removability. It was a civil violation of immigration law. As such, they did not have an interest in detaining a penitent. As the Fourth Court has explained it, because civil immigration violations do not constitute crimes, suspicion or knowledge that an individual has committed a civil immigration violation by itself does not give a law enforcement probable cause. Just so I'm clear, probable cause to what? To detain, Your Honor. So, the district court cited this Fifth Circuit case, city of El Cenizo, that seems to rely on this sort of, you know, collective knowledge doctrine or something that in the Fifth Circuit says that an ICE detainer requests evidence as probable cause of removability in every instance? Or is your point that, yeah, fine, probable cause of removability, but that's it? That's a civil infraction and sort of the state authorities don't have any business sort of enforcing ICE's protocols? They can in certain circumstances, Your Honor, if there's a, Cenizo was a facial challenge to a law that required every, to comply, required compliance with detainers. There are ways in which state officials can cooperate, but those, the federal law has carefully limited those opportunities. You need to be a trained immigration officials. What about Gonzalez? What about Gonzalez? Isn't there another case, Gonzalez, that also deals with probable cause? Sorry, my follow-up question is which Gonzalez? There's, I think, a number of them. I think there's a Ninth Circuit Gonzalez case, but I'm not sure. I don't recall which Gonzalez. Sorry. I apologize. You can answer Judge Newsom's question. So, your point, I guess I just want to make sure that I have your response to Cenizo because it was in the district court's opinion, but you didn't mention it in your brief. I just want to make sure that we have your response to Cenizo. Cenizo, so I didn't mention it in my brief because Cenizo was a facial challenge and this is an as-applied case. My response to Cenizo is that there are circumstances where complying with a detainer would be perfectly legitimate. It's not in this case. It is not an 86-day detention and it's only when the state officials have been trained properly and there isn't any evidence in the record to suggest they've been trained. I guess, in any event, you would say, fine, I'll grant you, you know, worst-case scenario for you. Cenizo nukes my probable cause argument, but I've still got Gerstein. Yes, Your Honor. Even if the probable cause argument isn't valid, it would still need to be a magistrate under Gerstein. As to the 14th Amendment violation, in Alcazar v. Mills, this court has expressed its clear preference to analyze claims under the Fourth Amendment over the 14th Amendment, but nonetheless, the appellant has stated a claim under the 14th Amendment. He had a right to release when he was granted parole. Appellees moved him in awareness of that right to release from the long-term prison to the transitional center. They then told him that they would release him within 48 hours if officials didn't show up. When officials didn't show up, rather than try and verify his status, rather than try and verify that there was a basis to detain him, they just continued the detention. They moved him back to the long-term facility and they told him, in essence, that he was ICE's problem. Such actions showed deliberate indifference to his right to go free. Can I ask you just a question? This really isn't your problem as much as it may be our problem, but why is it that this sort of like continued detention right in the due process space we've described as a substantive due process right, this sort of seems to me like the quintessential due process case, like real due process, not substantive due process, not deliberate indifference, but like real due process. You're being held, you're being denied liberty without anybody doing anything about it. Your Honor, I certainly believe that it is a violation of the 14th Amendment. It may be into the difficulty of distinguishing between substantive and procedural due process that when you don't have proper procedure, your substantive due process rights are also violated. It may be easier to analyze this claim as a procedural due process because some of the perhaps that in canon it was perhaps that they did follow the procedures, they just did it in a half-hearted way, and in such a way, her substantive due process rights to go free were really violated. In this case, it may be easier. Can I ask you, I guess, a procedural or maybe kind of logistical question? So, District Court says you're a prisoner, PLRA applies, and then proceeded to apply sort of PLRA restrictions. You know, sort of screening, paying, stuff like that. And I know that you've said in your briefs, this guy wasn't a prisoner, PLRA shouldn't have applied. But he was proceeding IFP, and so there was still like a screening apparatus that applied to him pursuant to the IFP statute. Is that the reason that you think sort of we don't have to, but could, I guess, sort of pierce through that procedural anomaly on the front end and address the merits of the claims? Because, like, the District Court sort of had to screen the complaint anyway because the guy was proceeding IFP. So, the whole prisoner thing is sort of beside the point? No, Your Honor, I don't agree that it's beside the point. I believe he was, he's now paid hundreds of dollars to the court, so to him it is very much a big part of the point. The screening, I have not challenged the screening apparatus because he was screened either had he been properly identified as a detainee, but not a prisoner, he should have, he would have been subject to a screening as an IFP, but he would not have paid $700 or whatever the amount ended up being. But he did not raise this issue before the District Court, correct? Nor in front of this court. He was just classified this way, and he then knew, and he then just proceeded to pay to the extent he could. I think Judge Branch might have meant that he didn't challenge his prisoner status before the District Court. But you've certainly challenged that before us, and so I guess maybe, maybe, her question is like can we do that now? Can we reach that question? Has this been waived because he did not challenge the prisoner status below? Your Honor, I don't believe there was a way to challenge the prisoner status below. They said classified him as a prisoner, and he had to pay money before they would hear what he had to say. He was classified as a prisoner, and in order for him to file, he had to pay the fees. Yes, correct. In essence, you're challenging it here. Yes. It's not really a jurisdictional point, but you're challenging it as saying he doesn't qualify under the PLRA as a prisoner. That is correct. He should not have had to pay the fees in order to proceed and advocate on his constitutional rights. That is correct. Judge Branch, do I understand your question as a waiver question? Yes. Your Honor, the Doctrine of Waiver is designed to address the appropriate argument to the appropriate form at the appropriate time. I believe the appropriate time, it would have been very difficult and possibly inappropriate to challenge a decision of the court once they had already decided he was a prisoner. The appropriate time to do it was on appeal after their decision had been made, and they had another court look at that decision that had been made. Immediately on appeal, or immediately, as soon as I was appointed on appeal, this issue was raised. I believe waiver would be inappropriate in this time because this is . . . Who designated him as a prisoner? Was it the district court, the clerk for the district court, or the district court itself? It was in the magistrate court's opinion. I don't recall whether there's a previous document entry, and it's also, again, even if you'd say that the district court's opinion was waived, he was classified as a prisoner again on appeal, and so that appeal, that issue is certainly live before this court. Because he had to pay appellate fees as well. I believe he had to pay some appellate fees. I believe because he got out of prison while the appeal was pending, he did not pay the full extent of his fees. Let me ask you this. If you're going to prevail, should we go ahead and address all these merits issues, or because the district court, or the magistrate judge, seem not to fully engage them, should we bust it and send it back for first instance review there? Your Honor, you should address the merits issues because the merits issues could arise again, and unless there is a question that an eighty-six day detention is valid without a neutral magistrate's review, or that you can legally detain somebody under Georgia state law without a judicial intervention, or that there was no fourteenth amendment violation, these issues are likely to arise. So, the more direction given to the district court, the better in this case. I see I'm out of time at this time. I reiterate, my client was held for eighty-six days. He was held without the review of judicial officials, and this clearly violates his constitutional and state rights. Thank you, Your Honors. Mr. Silberman, thank you again for taking the appointment, and for your representation to us that you will endeavor to make sure that he is represented on a going forward basis should we choose to remand him. I certainly will. Thank you.  All right, so that case is submitted.